19-3172 from Southern Iowa, United States v. Jay Sawatzky. Very well, Mr. Parrish. Good afternoon. We'll hear from you first. Good afternoon, Your Honor. For some reason, I can't get Judge Grunder or Judge Grant, but that's okay with me. Well, hold on. Let's stop the clock. We want you to have them. I'm not seeing Judge Grunder either on my screen. Well, if you check your list of participants, Mr. Parrish, if you have that. Yes, I did, Judge Grant, and I'm looking at my participants down here. Now I got him. He just came in. Thank you. I think if you right click on the name, you can pin the person. If you right click, it gives you an option to pin, and then the image will stay on the screen. I'm right clicking on him. I'm going to pin right now, and now I have him. I see that familiar face. Thank you so much. Very well. You may proceed with your argument. Thank you, Your Honor. I'm honored to represent Mr. Sawatzky today. In Mr. Sawatzky's case, although Mr. Sawatzky had an offense level of 24 and a criminal history of four, and he'd gone approximately 20 years without a serious conviction of either drugs or weapons, the district court used an improper standard and imposed a substantive unreasonable sentence in this case. The court asked basically a rhetorical question when he got to the 3553A factors, and we had already brought up the fact that he had this 20-year-old conviction. When he brought up this other factors, he talked about the racist material that Mr. Sawatzky had in several places that had been seized by law enforcement. We believe those are the factors that the court should not have considered, and they were impermissible standards to enhance his sentence by an upper variant of three years. The judge talked about this in his sentencing order in three separate occasions. He indicated that the presence of the weapons was serious because of the fairly pervasive or persistent possession of racist Nazi or white supremacist memorabilia, which speaks to the anger that was carried out. He talked about this watery African-American gang that clearly was not fully African-American according to the evidence that was presented. Additionally, he said, I've considered the need to promote respect for the law. His criminal history and his gang memorabilia suggest that he doesn't have that. Well, the government head of duty at this sentencing hearing to show how any of that perfectly legal material was somehow utilized in a fashion connected with his charge, which was simply a possession of firearms by a felon. That's the first thing, and second, did he use it in any manner to intimidate? I'm talking about the Nazi material, the white supremacist material, or the other material to try to intimidate a single person. The evidence was clear. Not one person saw Mr. Swarovski with a gun other than Ms. Hubby, and you know now in our rebuttal brief or our reply brief, he was acquitted of that charge in his defense, even though it's not in the record. I would say it was an alibi defense, but we did present what we thought was that acquittal. So the judge, using the fact that he had a domestic most recently made him dangerous, is no longer out there for the judge based upon this acquittal. It's acquitted conduct that he has to take a look at. What he looked at was several things, and it's kind of interesting because the government did not even connect that material to him. They said they found it in various places. One place they found it was a place that he lived sometime, was this trail. The agent admitted that other people lived there, admitted that his girlfriend lived there. He found something like a Nazi flag or something like that in that place. Nothing is illegal about possessing something like that. So the reason would be, why in the world would the judge use that to enhance his penalty? And even in enhancing his penalty, he didn't separate, well, I'm going to give him so many years of upper variance for the Nazi material, a white supremacist material, and so much for the fact that Miss Hubby was attacked, say, in a, what do you call it, domestic situation where they had this length of review. And I remind you, Miss Hubby was a meth addict. She was a paid informant. She gave contradictory statements all over the board. And that was the information that the judge used to enhance her, not only on the domestic, but to enhance her also on the other factors of accepting her testimony because they saw a video of her in the hospital. But more troubling than anything, than anything, was the possession of this material that is perfectly legal. What's wrong with having a Nazi flag? What's wrong with having a KKK? You could be a collector. But more importantly, it would seem they would have had to connect Mr. Sawatsky to conduct associated with that material. Simply because he writes out a statement, let's assume that the statement he wrote out you consider was his statement. Well, the judge would have to say, well, what about Mr. Sawatsky's conduct that points to the fact that I'm going to give him on a felon in possession charge, where he'd be looking at almost an 18 offense level. Why am I going to put him at a 24, knowing that he's going to go up based upon that old conviction? And now I'm going to enhance him based upon material. The judge makes his own personal assessment about the anger related to white supremacist or Nazi material or something like that. However, I'm sorry. Just a question on that. Was there any basis for that anger finding relating to this motorcycle gang activity? Correct. Two points, Judge Collinson. First, the gang was not fully African American. And that's easy by going on the Facebook. But also, the agent admitted that they had a Mr. Diaz that was in the club also. And he admitted that it was not racially motivated. He said it was a mitigating factor. That's what the agent testified to. He never once said that it was solely based upon race. It was based upon the fact, partially it looks like, that this motorcycle gang didn't want other people coming into the state without their permission. Not based upon race, but based upon the fact that that's how they felt. It reminded of a question in this Wisconsin case that Justice Thomas said. He said, what if there were five white guys and five black guys? When does the race factor come into consideration as a question he asked in that decision? When does the race factor question come into play? And it was a Wisconsin statute, obviously, that was seeking to enhance a penalty based upon a racial attack. I think that's the ultimate question. In this case, if you look at it through that prism, it would seem like that's not a basis for them to do that. Because their testimony was that it was not racial based. They wanted to imply that it was racial based, but that's not enough. They would have to show somehow that Mr. Sawatsky's conduct led to this type of engagement based upon race. Not one witness was brought into the courtroom. Not even his girlfriend, Hubby, in that acquitted conduct, said that it was based upon race. It was only the district court judge when he referenced that three times in his ruling. But interesting enough in his ruling, when we were talking about the 19-year-old conviction, he said, Mr. Parrish, basically, I get your argument on that point. It resonates with me. But yet, when he gets to his ruling to talk about a 3553A factor coming into play, he doesn't even factor in that 19-year-old ruling where the state court treated it as one conviction, both of those meth convictions, where no weapons was involved. Well, the judge goes to, he is really triggered by the memorabilia, saying that somehow that opens the door to a three-year enhancement. Remember, this is a weapons, a count of three counts. He gets two points, obviously, we know, for the stolen weapon, no issue about that, and two points for having more than three weapons. Straight up. Nothing complicated about that. Paying the drug charge gets dropped. I was wondering if you could address quickly the Sixth Amendment issue and the seizure of his attorney-client materials. Correct. The Sixth Amendment issue, Your Honor, Judge Grouse, is the fact that four days before they went into his jail cell, they took all of his material unbeknownst to us, and as we sit here today, we still have not seen the search warrant. Unfortunately for us, we went to the hearing. Now, I didn't trust the government's good faith. They said, well, you can have more time, but you know they tried to get what they call a 15-year sentence on him because they wanted that third conviction to go through. Happy for us, he was acquitted, so they could then make that argument that he's now a career criminal. In that case, we didn't get material. I think we meet the center case provision that we point out to our brief. It interfered with our ability to prepare for the sentencing, and we have no idea how the government used that information, so we can't say as we sit here today how we were prejudiced by them getting all of his documents, law enforcement going through his documents at the jail, no notice to us, and then they said they separated it out by creating a civil section to take a look at it. I know the lawyer very well. He is a reputable lawyer I know well, and he looked at the material. He then sent it to us, but that was basically pretty close to after the sentencing, so we had no idea the advantage that the government had, so they went through all of this material to prepare for their sentencing. They put us in a conundrum or gave us a hops on choice, to do a continuance, which we asked for, and then they now say we're disingenuous because we didn't take the continuance. We didn't have to. They put us in that position by government conduct. Thank you, your honors. Very well. Thank you for your argument, Mr. Parrish. Mr. Krichbaum, we'll hear from you. Thank you, and may it please the court. I begin with the evidence of our most recent hearing. I'm not hearing you, Mr. Krichbaum. We got some bad volume. Okay. I heard that as well. Can you hear me now, your honor? Yes. Mr. Parrish muted his microphone. It might have been related to that, so go ahead. Try again. I will begin with the evidence of the defendant's racial animus and then turn to the Sixth Amendment issue. The district court properly considered the defendant's racial animus, which showed his motive to attempt to murder members of a rival black motorcycle gang. Mr. Parrish said in his argument that it wasn't clear that the rival motorcycle gang was exclusively black. The testimony at the sentencing hearing was that every member of that rival gang except one was black, and that single member was Hispanic. So this is an exclusively minority gang who are almost exclusively black. The evidence that the court here heard was that the defendant collected and displayed racist paraphernalia, including KKK and Nazi emblems. The court also saw defendant's writing in a notebook in which the defendant collected slogans and symbols of his motorcycle gang, and then on the back page of that same notebook wrote the sentence, All N-words must die. The defendant used the actual N-word. He did not use the euphemism. That evidence was particularly relevant because the defendant and his fellow members of the Sons of Silence in November 2018 traveled to Waterloo, Iowa, and ambushed and shot at members of a black rival motorcycle gang. The district court considered the evidence of the defendant's racial animus, considered his statement that all N-words must die, and found that the offenses of conviction, defendant's possession of firearms, was more dangerous because of what the court called this persistent racial animus, which speaks to an anger that was carried out against a Waterloo African American upstart biker club that didn't have his permission. That was an entirely proper use of that evidence. The district court did not punish the defendant for his abstract beliefs or his political views. It didn't punish him for any thoughts that he had, but rather it found that he was more dangerous and his possession of firearms was more dangerous because he was motivated to try to murder black people and he possessed guns. That is a permissible use of the evidence under the Supreme Court's decision. We cited Wisconsin against Mitchell, and there's several cases cited in the Mitchell decision. If the court uses evidence of racial animus as relevant to a defendant's motive to commit violence or as relevant to the defendant's future dangerousness, that is permissible under the law, and that is what the district court did here. Unless there are questions about that evidence, I will turn to the Sixth Amendment issue. There were two specific points that Mr. Parrish raised. The first related to a continuance, and the second related to Mr. Parrish's claim that we don't know what the government did with the evidence seized from the search warrant. I'll start with the continuance. What was the basis for the warrant? The warrant, Your Honor, was issued by a U.S. magistrate judge pursuant to a search warrant. The affidavit and probable cause for that search warrant is not part of the record, and it is not a matter of public record. It relates to a criminal investigation that is not public. Okay. Go ahead, then. Finish with the other points. With respect to the continuance, the central complaint of Mr. Parrish at sentencing was that Mr. Swatsky hadn't been able to prepare because he had been deprived of the materials in his cell for two or three days. The district court recognized that issue and immediately offered Mr. Swatsky a continuance. Mr. Parrish responded that Mr. Swatsky did not want a continuance because he had an upcoming state court trial, and Mr. Swatsky wanted to be sentenced before that trial, which was going to be in about three weeks. The district court then said, I guarantee you we will have the sentencing before the trial and you can have your continuance. Mr. Parrish then paused in the middle of the sentencing hearing and discussed that prospect with Mr. Swatsky, explained the pros and cons, the appellate implications, and then reported back to the court that Mr. Swatsky did not want a continuance, but that he wanted to proceed with the sentencing under these circumstances. Having been offered a continuance and rejected it, Mr. Swatsky cannot now complain that he didn't get a continuance or that he did not have enough time to prepare. As for the issue of what the government did with the materials seized from the search warrant, the record is also clear on that. As the record makes clear, first of all, the government used a pretty standard privilege review process to ensure that no member of the prosecution team saw or viewed any privileged material. The district court specifically found that no member of the prosecution team saw any privileged material and that the government didn't rely on any privileged material or any leads from such material at the sentencing hearing. The government provided Mr. Parrish, defense counsel, with all of the materials that were seized from the jail cell, both potentially privileged and unprivileged material. So Mr. Parrish has been aware of all of that material for a year. The government also provided Mr. Parrish... So it was provided before the sentencing hearing? Yes, Your Honor. How long before the hearing? Does the record show that? Yes, Your Honor. It was provided the next business day after the search, which was a Monday, which was two days before the hearing. Mr. Parrish had those materials before the hearing. He also had all of the government's exhibits and all of the government's sentencing arguments. And so if the government had relied on anything from the search, that fact should be apparent to Mr. Parrish because he had everything from both the government's exhibits and what was taken in the search. Neither in the district court nor on appeal has Mr. Parrish pointed to anything that the government offered that was taken from that jail cell because there wasn't anything. In fact, the prosecutors and the agents did not see any, even potentially privileged material, and the government did not offer any evidence taken during that search, whether it was either privileged or unprivileged, and that is borne out by the exhibits and the record of the sentencing hearing. So I think the legal issue for this court is whether the defendant has demonstrated that the government intruded into the attorney-client relationship and that the defendant was substantially prejudiced by such an intrusion. That is a showing the defendant must make, and he did not make either showing in our view. Counsel, would you agree that the seizure of his attorney-client materials put him in a quandary where he either had to move forward with the sentencing without them or face potentially negative consequences by doing it beyond the other sentencing? No, Your Honor, for a few reasons. First, we returned all of those materials to defense counsel the next business day, which was still two days before sentencing. Now, if that was not enough time, so I guess my first point there is the defendant was deprived of them for two or three days. If that was not enough time for the defendant to prepare, his state court trial was still three weeks away, and the district court guaranteed him a continuance in which he could have whatever time he needed to prepare and still have his sentencing before the state court trial. So if he was without those materials for two or three days, and he could have had a continuance of up to two or three weeks, I cannot see how he was prejudiced by the loss of those materials for a few days when the court guaranteed him a continuance and guaranteed him a sentencing hearing before the state court trial. So I do not believe the defendant has established prejudice on that ground. If there are no other questions, we would ask that the sentence be affirmed. Thank you. Thank you for your argument. Mr. Parrish, you used all your time, but Mr. Crickbaum gave back a minute, so we'll give you a minute for rebuttal. Thank you, Your Honors. Out of the record, it says the agent was asked whether this was incident and whether it was based upon race. He said no. There's another statement that was made by the judge that is a critical part of this when he said, I've considered the need to promote respect for the law. His criminal history and his gang memorabilia suggests he doesn't have that. So again, the judge is using an impermissible factor to use that. That's not even tied into the gang activity of the attack in Waterloo. For that reason, we believe that the court has to send it back for a rehearing so the judge can take that out. That's an impermissible standard simply because they had the material in their home to use that to create an area to increase his sentence by three years. Thank you, Your Honors. Very well. Thank you both for appearing at a video conference. The case is submitted, and the court will file an opinion in due course. Thank you, Your Honors. Appreciate it.